**Alex SALKAY, Jr., Petitioner-Appellant,**

**v.**

**Louie L. WAINWRIGHT, Director, Department of Offender Rehabilitation, Respondent-Appellee.**

**No. 76–1620.**

United States Court of Appeals, Fifth Circuit.

May 16, 1977.

Theodore Klein, Miami, Fla. (Court-appointed), for petitioner-appellant.

Anthony C. Musto, Asst. Atty. Gen., Miami, Fla., Robert L. Shevin, Atty. Gen. of Fla., Tallahassee, Fla., for respondent-appellee.

Before GOLDBERG and TJOFLAT, Circuit Judges, and WYATT *, District Judge.

TJOFLAT, Circuit Judge:

In this case, the appellant Salkay seeks to reverse an order by the district court denying his habeas corpus petition without an evidentiary hearing. We vacate the lower court's order and remand the case for two reasons: first, because we feel that the current state of the record requires that an evidentiary hearing be held; and second, because we feel that the district court erred in concluding that Salkay's nolo contendere plea effectively waived his right to assert, through habeas proceedings, that he was denied the effective assistance of counsel.

On November 12, 1975, Salkay filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1970). At the time, Salkay was serving a ten-year sentence which the Florida courts had imposed on November 24, 1970, following Salkay's plea of nolo contendere, entered in October of 1970, to one count of robbery. Salkay's habeas petition alleged that his constitutional rights had been violated in the state court proceedings in several respects.

* District Judge of the Southern District of New York, sitting by designation.

Among other things, he claimed that he had been denied the effective assistance of counsel, and that his nolo contendere plea had been induced by the prosecutor's promises—thereafter unfulfilled—concerning sentencing.

The district court denied Salkay's petition on January 16, 1976, based upon the record of the state court proceedings and without the benefit of an evidentiary hearing. The court concluded that the record established that the state prosecutor fulfilled any promises made during plea negotiations, and that Salkay's plea had been voluntarily entered. For this reason, the court further concluded that Salkay had waived the remainder of his constitutional objections—including his ineffective assistance of counsel contention—under the rule of *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). We do not agree with these conclusions.

■ In his habeas petition, Salkay alleges that his nolo plea was entered pursuant to a plea agreement with the state prosecutor. This allegation is supported by several documents in the record, including an affidavit sworn by the appellant Salkay's father, Alex Salkay, Sr., and a letter written on Salkay's behalf by the state prosecutor to the Florida parole authorities. The affidavit asserts that the senior Salkay spoke with the state prosecutor before Salkay entered his nolo plea, and that the prosecutor

> advised [Salkay, Sr.] that his Alex Jr. should plead guilty to the charge of robbery and led Affiant to believe a sentence of five years would be imposed in return for the plea and stressed to Affiant that his son Alex would be paroled in a matter of eighteen months at the most. . . . Affiant conveyed this information to his son Alex and stressed that he should plead guilty on the basis of [prosecutor] Steve Tillotson's offer.

The letter in question corroborates the contention that conversations between the senior Salkay and the prosecutor did occur, although the letter does not specify the terms of any plea bargain which may have been agreed upon.

Clearly, then, the record supports Salkay's assertion that some plea agreement existed. A significant problem, however, is that nothing appears in this record to indicate that the state court was cognizant of the existence of any plea agreement. The record contains a transcript of Salkay's entry of his nolo plea, and that transcript contains no mention of a plea bargain.[1]

---

1. The district court relied heavily upon the transcript of Salkay's entry of his plea to determine whether the plea was impermissibly coerced through a broken plea agreement. In our view, this reliance was erroneous. The transcript reveals that the state court carefully ascertained that Salkay understood that the *court* had made no promises regarding sentencing, and that Salkay appreciated the *potentially* heavy sentences he might receive. No mention was ever made, however, of any promises made by the *prosecution*, since the existence of a plea agreement was never discussed on the record.

The American Bar Association Standards Relating to the Administration of Criminal Justice suggest that all plea agreements should appear upon the record:

> The trial judge should not accept a plea of guilty or nolo contendere without first inquiring whether there is a plea agreement and, if there is one, requiring that it be disclosed on the record.

ABA Standards, The Function of the Trial Judge § 4.1(b) (1972). The applicable rule governing practice in the federal courts, Fed.R. Crim.P. 11(e)(2), similarly requires a thorough disclosure of all negotiated pleas. Florida, on the other hand, has adopted a rule of procedure which apparently encourages, but does not require, the disclosure upon the record of all plea arrangements:

> After an agreement on a plea has been reached, the trial judge may, with the consent of the parties, have made known to him the agreement and reasons therefor prior to the acceptance of the plea. The terms of the agreement shall be placed in the record.

. . .

Fla.R.Crim.P. 3.171(c). Since this rule was adopted in 1972, *In re Florida Rules of Criminal Procedure*, 272 So.2d 65 (Fla.1972), it was not in effect at the time of the state court proceedings which form the basis of Salkay's complaint.

Of course we do not mean to imply that every failure to disclose a plea arrangement upon the record necessarily violates constitutionally-protected rights. We do underscore, however, the obvious advantages of such a practice, since it allows the trial court to in-

Salkay's sentencing proceedings were not transcribed, so we cannot know whether the matter was discussed before the court at that juncture. Moreover, no evidentiary hearing was held in the course of Salkay's pursuit of his collateral state remedies.[2]

In our view, there are factual issues here which cannot be fairly determined upon this record. The issue is not whether any plea agreement was struck. It is clear enough from the record and from the arguments of the parties that some arrangement existed. The point, rather, is that without some on-the-record disclosure of a plea agreement, it has been impossible—for both the state courts and the federal district court—to determine what the terms of the alleged agreement were, and thus whether the state in fact complied with its side of the bargain. These facts are essential to this habeas proceeding, for Salkay's petition alleges a breach of the "constitutional policy that plea bargains, if made, are to be honored." *Lebosky v. Saxbe*, 508 F.2d 1047, 1050 (5th Cir. 1975).[3] In our judgment, it is time that a record be developed on this issue. 28 U.S.C. § 2254(d)(3) (1970). *Cf. Dugan v. United States*, 521 F.2d 231 (5th Cir. 1975).

We also disagree with the district court's conclusion that Salkay's entry of a nolo plea waived his right to contend that he was denied the effective assistance of counsel in the state courts. The question of whether Salkay received the effective assistance of counsel weighs into the determination of whether his nolo plea was knowingly and voluntarily entered. *See Mason v. Balcom*, 531 F.2d 717 (5th Cir. 1976); *Herring v. Estelle*, 491 F.2d 125 (5th Cir. 1974). Thus, a determination of the volun-

tariness of Salkay's plea must subsume the assistance of counsel issue—it cannot preclude it.

Salkay's habeas petition asserts that his trial counsel, the public defender, failed to investigate certain alleged violations of Salkay's constitutional rights in connection with his arrest, detention, and subsequent confession. Some of these allegations are corroborated by the senior Salkay's affidavit. Here again, we believe that Salkay has raised an issue of fact that can be adequately resolved only through an evidentiary hearing in the district court. Accordingly, this issue should be available to Salkay in the proceedings on remand.

For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED for proceedings not inconsistent with this opinion.

---

quire closely into the promises which have been offered to a particular defendant, as well as the degree of coercion attendant to securing the negotiated plea.

2. Although Salkay did not in form pursue habeas relief in the Florida courts, he did assert his constitutional claims by way of a post-judgment pleading captioned "Motion to Vacate Judgment and Sentence and Grant a New Trial or Alternatively Resentence Defendant to Plea Agreement Term." Record at 11. Salkay's

motion was denied by the state trial court, and the trial court's disposition of the matter was affirmed by the Florida Fourth District Court of Appeals without a published opinion. Record at 17. Under these circumstances, we agree with the district court's conclusion that Salkay has exhausted his remedies in the Florida courts within the meaning of 28 U.S.C. § 2254(b) (1970).

3. *See also Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).