**UNITED STATES of America**

v.

**Isny JOSEPH.**

**No. 89–247–CR–T–17C.**

United States District Court,
M.D. Florida,
Tampa Division.

May 16, 1990.

Jeffrey Downing, Asst. U.S. Atty., Brandon, Fla., for the U.S.

Matthew Perry, Asst. Federal Public Defender, Tampa, Fla., Richard L. Cassin, Sarasota, Fla., for defendant.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on the report and recommendation of the Honorable Elizabeth A. Jenkins, United States Magistrate, and Defendant's objections thereto.

After consideration, the Court adopts the report and recommendation in its entirety, and it is incorporated herein by reference. Accordingly, it is

ORDERED that Defendant's motion for withdrawal of plea is denied, and the Courtroom Deputy shall schedule the sentencing in this case.

DONE and ORDERED.

## REPORT AND RECOMMENDATION

ELIZABETH A. JENKINS, United States Magistrate.

THIS CAUSE comes on for consideration of a motion of the defendant to withdraw his plea, dated March 9, 1990, and response thereto.[1] A motion for evidentiary hearing was filed on March 19, 1990. For the reasons stated hereafter, I recommend that the motion be denied without evidentiary hearing.

On November 27, 1989, the defendant pleaded guilty to a four-count indictment charging him with distributing 50 grams or more of crack cocaine on May 24, 1989 (Count One); possessing a handgun in relation to the Count One crime (Count Two); conspiring to possess with intent to distribute 500 grams of cocaine between September 15 and 18, 1989 (Count Three); and possessing a handgun in relation to the Count Three crime (Count Four).

Defendant's certified motion states that his retained counsel, Wilbur Chaney, (1) did not explain the minimum mandatory penalties or possible sentence to him; (2) forced him to plead guilty after the defendant indicated he did not want to and the defendant told Mr. Chaney to pick a jury; (3) "played with his head"; (4) advised defendant that if he pleaded guilty, he would "get a two or three year sentence" and maybe do one year and get out on probation; (5) failed to believe defendant's version and instead chose to believe the

---

1. The motion has been referred to the undersigned by the district court judge to conduct a hearing, if necessary, and for a Report and Recommendation, by order dated March 13, 1990. (Dkt. 66).

agents; and (6) misunderstood what the defendant stated.[2]

## I

Rule 32(d), Fed.R.Crim.P., provides that "the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason". Denial of a motion to withdraw a plea under Rule 32(d) is reviewable only for an abuse of discretion. Some factors to be considered are: (1) whether close assistance of counsel was available; (2) whether the original plea was knowing and voluntary; (3) whether judicial resources would be conserved; (4) the lapse of time between the entry of the plea and the motion to withdraw; and (5) whether the Government would be prejudiced by withdrawal of the plea. *United States v. Gonzalez–Mercado*, 808 F.2d 796, 799–801 (11th Cir.1987) (citations omitted).

The good faith, credibility and weight of a defendant's assertions in support of a motion under Rule 32(d) are issues for the trial court to decide. *United States v. Buckles*, 843 F.2d 469, 472 (11th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 2450, 104 L.Ed.2d 1005 (1989) (citations omitted).

A defendant who seeks to withdraw his plea is not automatically entitled to an evidentiary hearing. Where the only evidence in support of the motion to withdraw is the affidavit of a defendant which contradicts his former testimony at the change of plea hearing, an evidentiary hearing is not required. On the other hand, where a motion is accompanied by credible third party affidavits or other documentary evidence, an evidentiary hearing is needed. *See generally Matthews v. United States*, 533 F.2d 900, 902 (5th Cir.1976), *cert. denied,* 429 U.S. 1121, 97 S.Ct. 1156, 51 L.Ed.2d 571 (1977). An evidentiary hearing is also needed if the defendant's affidavit is not contradicted by the remainder of the record. *Downs–Morgan v. United States,* 765 F.2d 1534, 1538 n. 8 (11th Cir.1985).

## II

Here, the motion is certified as true and correct by petitioner and bears his signature but is not sworn or signed under penalty of perjury. It is not accompanied by any third party affidavits or other evidence corroborating petitioner's assertions. Moreover, petitioner's assertions are contradicted by the statements he made under oath at the change of plea hearing as well as the statements of his attorney at the plea colloquy which the defendant did not dispute.

No written plea agreement was entered into between the defendant and the government. The defendant pleaded "straight up" without any agreement as to sentence except the possibility that the Government might move for a reduction in sentence or departure from the guidelines if the defendant provided "substantial assistance" and was truthful. (T1 10–13; 16–17; 20–21).[3]

According to the prosecutor, subsequent to the defendant's plea, he was debriefed by a DEA Task Force agent on two occasions and was untruthful. Therefore the Government did not move for a reduction in petitioner's sentence under the "substantial assistance" provision. (T2 2–10). The court, however, made the defendant fully aware at the change of plea hearing that any reduction in sentence was solely within the Government's discretion. (T1 15–16; 29).

As a result of his pleas, defendant faces a penalty of ten years to life on Count One, five to forty years on Count Three, a mandatory consecutive five year term without parole on Count Two and a mandatory consecutive term of twenty years without parole on Count Four subject to the Sentencing Guidelines.

As part of the Rule 11 colloquy, the defendant was advised of the minimum

---

**2.** The defendant also asserts that the United States Probation Officer who wrote the "defendant's version" of the pre-sentence report also misunderstood what the defendant stated.

**3.** References to the transcript of the change of plea hearing on November 27, 1989 are indi-

cated by the symbol "T1" followed by the page number(s). References to the transcript of the hearing on January 26, 1990 are indicated by the symbol "T2" followed by the page number(s).

mandatory terms of imprisonment and maximum penalty for all four charges in the indictment. Government counsel advised the court in the presence of the defendant and his counsel that the Government's estimate of the guidelines range on the drug charges was twelve and one-half to fifteen and one-half years which added to the mandatory penalties on the gun charges meant that the estimated sentence would be in the range of thirty-seven and one-half to forty and one-half years. (T1 3–7; 34–36).[4] The defendant answered "Yes" in response to the court's inquiry as to whether Mr. Chaney had fully and completely discussed the case with defendant and had advised the defendant of his constitutional rights and possible defenses. The defendant also answered "Yes" when the court asked whether the defendant was satisfied with Mr. Chaney's representation. (T1 44–45). The defendant also stated that he understood English although he did not read or write it. He answered "Yes" when the Court stated: "If I ask you something and you don't understand it, you're going to ask me to stop, right?" (T1 18–19).[5] The defendant indicated that no threats or promises were made to him except that "the only thing forcing me to do it is because we're talking about thirty-seven and forty years, that's the situation". (T1 27–28).

Near the beginning of the plea colloquy, defendant's counsel, Mr. Chaney, advised the court of his discussions with the defendant concerning the consequences of his pleas.

MR. CHANEY: When I went and talked to Mr. Joseph about the plea, I fully explained to him that I could not guarantee him as to what amount of time that he would get if he pled and he's rendered substantial assistance to the Government and the Government came forward with that, I told him I could not tell him how much time, other than to give him the general outline of what he possibly could face, in other words, from anywhere from thirty-seven years to approximately forty some years. That's based on the previous statement made by the Government in terms of its general calculation of what he would get under the sentencing guideline. I further explained to him that he could possibly—if he rendered substantial assistance, that approximately one year after that date he could still possibly get the Government to file what we call the Rule 35 motion, and further reduce his sentence if he continued to cooperate. Mr. Joseph then inquired as to whether he would be out of jail when he's rendering substantial assistance. I told him I could not guarantee him that, that there's a great likelihood that he would not be taken from the jail to do that. That would be something left up to the agents and the Government. I told him further that the Government will make arrangements—if his family is seriously threatened, that they will make arrangements to protect them. And I told him that he could then after the plea or sometime they can call his girlfriend to explain to her—that the lady that has the child by him, explain to her what had happened so they could take precautionary measures in the future and then, of course, work with the Government in

---

**4.** In fact, after an initial discussion of the penalties for each of the four offenses made at a status conference which preceded the plea, the court as part of the plea colloquy asked the defendant to recite what the maximum penalties were for each offense. The defendant did so, with some assistance. (T1 34–36). Moreover, the court explained to the defendant that "consecutive" meant that the penalties could be added up (T1 36) and that "mandatory" meant that the court had no discretion as to the penalty. (T1 16).

**5.** Although the motion to withdraw states that defendant is Haitian no allegation is made in the motion to withdraw that he did not under-

stand English. The defendant is a high school graduate who operated a furniture business in Winter Haven, Florida. (T1 39). The subsequently filed motion for evidentiary hearing suggests that an interpreter is necessary at any evidentiary hearing. However, the court file reflects that defendant had an initial appearance, a detention hearing, an arraignment, a re-arraignment (change of plea) and hearing before the district court judge, all without an interpreter and when petitioner was represented by counsel. Any suggestion that defendant's plea should be withdrawn due to language difficulties is totally without merit.

that regard. And then I asked him did he still want to persist in the plea. After telling him that I'm ready to go to trial if he wants to he said he wanted to continue on, go forward with the plea.

THE COURT: All right. Is there any question that you want to ask of your client, if he understood what you just said.

MR. CHANEY: You understood what I just said, Mr. Joseph?

THE DEFENDANT: Yes.

MR. CHANEY: You still persist on going forward with the plea at this time?

THE DEFENDANT: Well, yeah.

(T1 20–21).

Later on during the plea colloquy, the defendant asked whether he could get probation if he cooperated with the Government and did anything they wanted. The court responded that " ... I don't know what cooperation you're going to provide if any and I don't know what the Government's going to recommend, but I think you ought to be clear in your mind that you're facing heavy charges for heavy involvement...." The court concluded its remarks by stating that "what the Government does is of utmost importance to you, do you understand that?" to which the defendant stated "Yes". Mr. Chaney then stated: "Just for the record, I did advise him that there is great likelihood that there will be some jail time regardless of what he does." (T1 49–50).

At the conclusion of the hearing, the district court made detailed findings concerning the plea, including the following:

THE COURT: All right. The Court specifically finds that the Defendant is an able-bodied male of average intelligence, that he fully understands the nature of the charges and the maximum possible sentence. He is not under the influence of drugs, pills, alcohol or medication nor has he been treated for a mental illness. The plea is not produced by threats, force or promise....

(T1 46).

On January 26, 1990, the defendant and his attorney appeared for sentencing. Mr. Chaney indicated that the defendant might want to withdraw his pleas to some or all of the charges and the court continued the sentencing, granted counsel's motion to withdraw and directed that new counsel be appointed for the defendant. (T2 12–16). The motion to withdraw plea was filed after the Federal Public Defender was appointed to represent defendant.

## Conclusion

The Supreme Court has held that:

[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding. Solemn declarations in open court carry a strong presumption of veracity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). (Citations omitted). Although *Blackledge* involved a state prisoner seeking habeas relief in federal court, its holding is pertinent to the situation presented here where a defendant seeks to withdraw a plea in federal court entered pursuant to Rule 11, Fed.R.Crim.P.

Defendant's contention that Mr. Chaney misinformed him about the maximum penalties, the likely sentence and the consequences of his pleas are refuted by defendant's testimony to the contrary made at the change of plea hearing on November 27, 1989 as well as Mr. Chaney's own statement to the court which the defendant did not dispute. (T1 20–24; 27–29; 30; 50–51). Defendant received the close assistance of counsel at the hearing, the hearing was conducted in full compliance with Rule 11, Fed.R.Crim.P., and his original plea was knowing and voluntary.[6] The timing of his motion to withdraw plea strongly suggests that petitioner's desire to withdraw is not

---

**6.** It does not appear from the transcript that the     defendant was merely giving rote answers to the

motivated by any misunderstanding as to the nature and consequences of his plea or any improper influence by counsel but rather due to a change of mind after defendant saw the Pre–Sentence Report. (T2 2–5; 8–9; 11–12). A defendant's change of mind after he has seen the Pre–Sentence Report is not sufficient reason to require the district judge to permit withdrawal of the plea. *See United States v. Sweeney,* 878 F.2d 68, 70 (2d Cir.1989) (citations omitted). Neither is the fact that the defendant pleaded guilty with the hope that the Government would move for a reduction in sentence under the substantial assistance provisions of the United States Code and the sentencing guidelines. These factors, as well as the interests of judicial economy, militate against granting the relief sought.[7]

The motion to vacate plea filed on March 9, 1990, and motion for evidentiary hearing filed on March 19, 1990, should therefore be denied. Defendant has failed to set forth fair and just reasons why he should be permitted to withdraw his plea or sufficient facts to warrant an evidentiary hearing.

It is so RECOMMENDED.

Dated: April 5, 1990.

court's questions. Several times during the hearing, the defendant asked questions or indicated that he did not understand. The court provided additional explanations after which the defendant indicated he understood. (T1 12–13; 15–17; 27–28; 29–30; 32–34; 49–51).

7. The Government has not suggested that it would be prejudiced by withdrawal of the plea.